# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

TODD GREINER FARMS PACKING, LLC,
a Michigan limited liability corporation,
TODD M. GREINER, and SARAH GREINER,

      Plaintiffs,

v.

LUCLERA GABRIEL, JEAN PAUL, ALTEGA
SEVERE, ELINE CHERY, FANIA BORDES
MENTOR, JEAN JACQUES DESSALINES BORDES,
FINA ZEAU, EMMANUEL JEAN ELIE SEMEXANT,
TERTIL JULES, ANNE AUBOURG LAMOUR,
IFORA PIERRE, ROGER POMPILIUS, MARIO
FLEURY, MARIE SYLVIA CORNET, JEAN DESIR,
JEAN MAURICE MASSE, MIREILLE MILORD,
SAINT PIERRE HILAIRE, JEAN ANTOINE SILLON,
JEAN AUGUSTIN COMPERE, JEAN T. VERTUS,
MILOT VERTUS, and JEAN JOSEPH MORNO,

      Defendants.

**Case No. 1:16-cv-00188**

**HON. JANET T. NEFF**

---

## DEFENDANTS' ANSWER AND COUNTERCLAIMS

Defendants LUCLERA GABRIEL, JEAN PAUL, ALTEGA SEVERE, ELINE CHERY,

FANIA BORDES MENTOR, JEAN JACQUES BORDES DESSALINES[1], FINA ZEAU,

EMMANUEL JEAN SEMEXANT, TERTIL JULES, ANNE AUBOURG LAMOUR, IFORA

---

[1] JEAN JACQUES BORDES DESSALINES hereby answers Plaintiffs' claims regarding "Jean Jacques Dessalines Bordes" to the extent those claims were intended to be made against Jean Jacques Bordes Dessalines.

1

PIERRE, ROGER POMPILUS, MARIE SYLVITA COURNET[2], JEAN DESIR, JEAN

MAURICE MASSE, MIREILLE MILORD, SAINT PIERRE HILAIRE, JEAN ANTOINE

SILLON, JEAN AUGUSTIN COMPERE, JEAN T. VERTUS, MILOT VERTUS and JEAN

JOSEPH MORNO (collectively referred to as "the Farmworkers"), by and through their

undersigned counsel, answer the Original Complaint of Plaintiffs TODD GREINER FARMS

PACKING, LLC, TODD M. GREINER, AND SARAH GREINER (collectively, "Growers"),

and present their Counterclaims as follows:

## ANSWER TO GREINERS' COMPLAINT

Unless expressly admitted below, Defendants deny each and every allegation Growers set

forth in their Complaint.

## THE PARTIES[3]

1.       Plaintiff Todd Greiner Farms Packing, LLC is a Michigan  limited  liability

company  with its principal place  of business  in Hart, Michigan.

**RESPONSE: The Farmworkers admit the factual allegations set forth in Paragraph 1 of**

**Plaintiffs' Complaint.**

2.       Plaintiff Todd Greiner resides in Hart, Michigan.

**RESPONSE: The Farmworkers are without knowledge sufficient to enable them to admit**

**or deny the allegations contained in Paragraph 2.**

3.       Plaintiff Sarah Grainer [sic] resides in Hart, Michigan.

**RESPONSE: The Farmworkers are without knowledge sufficient to enable them to admit**

---

[2] MARIE SYLVITA COURNET hereby answers Plaintiffs' claims regarding "Marie Sylvia
Cornet" to the extent those claims were intended to be made against Marie Sylvita Cournet.
[3] For ease of reference only, Defendants have reproduced the headings Plaintiffs used in their
Complaint. To the extent the headings contain any allegations or characterizations, Defendants
deny the truth of those allegations or characterizations.

or deny the allegations contained in Paragraph 3.

4.     Upon information and belief, Defendants LUCLERA GABRIEL, JEAN JACQUES DESSALINES BORDES, FANIA BORDES MENTOR, MARIO FLEURY, and ROGER POMPILIUS, reside in Palm Beach County, Florida.

**RESPONSE: The Farmworkers admit that they are residents of Florida, but state that not all of the individual Farmworker Defendants listed in Paragraph 4 of the Complaint reside in Palm Beach County.**

5.     Upon information and belief, Defendants ANNE AUBOURG LAMOUR, ELINE CHERY, TERTIL JULES, JEAN PAUL, IFORA PIERRE, EMMANUEL JEAN ELIE SEMEXANT, ALTEGA SEVERE, FINA ZEAU, MARIE SYLVIA CORNET, JEAN DESIR, SAINT PIERRE HILAIRE, JEAN ANTOINE SILLON, JEAN MAURICE MASSE, JEAN JOSEPH MORNO, JEAN T. VERTUS, MILOT VERTUS, and JEAN AGUSTIN COMPERE reside in Miami-Dade County, Florida.

**RESPONSE: The Farmworkers admit that they are residents of Florida, but state that not all of the individual Farmworker Defendants listed in Paragraph 5 of the Complaint reside in Miami-Dade County.**

6.     Upon information and belief, Defendant MIREILLE MILORD resides in Broward County, Florida.

**RESPONSE: The Farmworkers admit the factual allegations set forth in Paragraph 6 of Plaintiffs' Complaint.**

### JURISDICTION AND VENUE

7.     This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 with respect to the disputes at issue arising under the Migrant and Seasonal Agricultural Worker Protection Act,

3

29 U.S.C. §§ 1801, et seq. ("AWPA"), pursuant to 28 U.S.C. § 1367 for the related state claims, and pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, et seq.

**RESPONSE: The Farmworkers admit that this Court has jurisdiction over valid claims brought under the Migrant and Seasonal Agricultural Worker Protection Act, 29 U.S.C. §§ 1801, *et seq*., and that it may provide declaratory relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq*.**

8. There is complete diversity between Plaintiffs and Defendants, and the amount in controversy exceeds $75,000.00 exclusive of interest and costs. Therefore, this Court also has subject matter jurisdiction over this action under 28 U.S.C. § 1332.

**RESPONSE: The Farmworkers admit that there is complete diversity between the parties. While the aggregate of amount in controversy between the individual Farmworkers and Plaintiffs may exceed $75,000, the amount in controversy between any individual Farmworker and Plaintiffs is less than $75,000. Accordingly, the Farmworkers deny that jurisdiction is appropriate under 28 U.S.C. § 1332.**

9. This Court has personal jurisdiction over Defendants, and venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise in the claims occurred in this District.

**RESPONSE: The Farmworkers admit the factual allegations set forth in Paragraph 9 of Plaintiffs' Complaint.**

## FACTUAL BACKGROUND

10. Todd Greiner Farms grows, packs, and ships a variety of fruits and vegetables, including asparagus, pumpkins, apples, and cherries among other crops. Todd Greiner and Sarah Greiner are the sole owners of Todd Greiner Farms. Todd Greiner Farms greatly expanded its

operations in 2012, when it purchased a large farm and farming operation from Todd Greiner's father, Sebastian Greiner.

**RESPONSE: The Farmworkers admit the first two sentences of Paragraph 10 of Plaintiffs' Complaint. The Farmworkers are without knowledge or information sufficient to form a belief as to the truth of the final sentence of Paragraph 10 of Plaintiffs' Complaint.**

11.    In 2014, Todd Greiner Farms entered into a contract with International Easy Labor, Inc. ("IEL"), a farm labor contractor. *See* 2014 Farm Labor Contractor Agreement ("FLC Agreement"), **Exhibit A**.

**RESPONSE: The Farmworkers admit the factual allegations set forth in Paragraph 11 of Plaintiffs' Complaint.**

12.    Todd Greiner Farms had never previously contracted with a farm labor contractor, and only did so in 2014 as a last resort effort to obtain necessary employees for its operations during a period of labor shortage.

**RESPONSE: The Farmworkers are without knowledge or information sufficient to form a belief as to the truth of the factual allegations set forth in Paragraph 12 of Plaintiffs' Complaint.**

13.    IEL is owned and operated by Emmanuelly Germain. At the time the parties entered into the FLC Agreement, IEL provided Todd Greiner Farms with a valid and current farm labor contractor registration for Mr. Germain as well as a current certificate of liability insurance for IEL. *See* **Exhibit B**.

**RESPONSE: The Farmworkers are without knowledge or information sufficient to form a belief as to the truth of the factual allegations set forth in Paragraph 13 of Plaintiffs' Complaint.**

14.     Mr. Germain is a certified farm labor contractor with a federal certificate of registration (C-04-587260-A-17-R) authorizing him to perform farm labor contracting activities under AWPA. Mr. Germain's certificate of registration is valid through January 31, 2017. Likewise, IEL also holds a certificate of registration as a farm labor contractor (C-04-021099-D-16-R), which is valid through April 30, 2016.

**RESPONSE: The Farmworkers admit Emmanuely Germain has a farm labor contractor certificate number C-04-587260-A-17-R, but deny that he has authorization to perform the farm labor contracting activities of driving, housing, or transporting workers. The Farmworkers further state that certificate number C-04-587260-A-17-R has a start date of February 10, 2015 and, therefore, deny any allegation that certificate number C-04-587260-A-17-R authorized Emmanuely Germain to perform farm labor contracting activities in relation to the Farmworkers during the 2014 season. The Farmworkers admit that International Easy Labor had a farm labor contractor certificate number C-04-021099-D-16-R, which was valid from May 12, 2015 through April 30, 2016. The Farmworkers deny that International Easy Labor had authorization to perform farm labor contracting activities related to driving and housing workers and deny any allegation that certificate number C-04-021099-D-16-R authorized International Easy Labor to perform any farm labor contracting activities in relation to the Farmworkers during the 2014 season.**

15.     Pursuant to the FLC Agreement, IEL agreed to recruit and transport 30 to 35 workers to Todd Greiner Farms for the 2014 growing season.

**RESPONSE: The Farmworkers admit the factual allegations set forth in Paragraph 15 of Plaintiffs' Complaint.**

16.     IEL agreed in the FLC Agreement that it would provide a copy of Todd Greiner

Farms' written employment disclosures (the "Employment Disclosures") to all of the workers that it recruited. See Ex. A at 2. IEL further represented in the FLC Agreement that it would "[i]nform workers that they are not guaranteed employment by [Todd Greiner Farms]." *Id.*

**RESPONSE: The Farmworkers admit the factual allegations set forth in Paragraph 16 of Plaintiffs' Complaint.**

17.     In addition, EIL [sic] represented in the FLC Agreement that workers are responsible for transportation to Todd Greiner Farms, including for work each day. *Id.* at 3.

**RESPONSE: The Farmworkers deny the factual allegations set forth in Paragraph 17 of Plaintiffs' Complaint.  The "FLC Agreement," merely states IEL was responsible only to "[i]nform workers that they are responsible for transportation to Grower's farm and to work each day." (Compl., Ex. A, Dkt. 1-1, PageID.18). The Farmworkers further state that under the "FLC Agreement," IEL was to "furnish Grower with 1 supervisor/driver . . . [who] must arrive with the first workers . . .[and] Grower will pay $150 transportation fee per worker." (*Id.* at 17, 19).**

18.     Pursuant to the FLC Agreement, IEL also represented that it would inform all workers that they must possess the appropriate skills to perform the agricultural work activities described in the agreement, which are described as "planting, cultivating, irrigating, weeding, pruning, hoeing, spraying, fertilizing, and harvesting cleanup," among other tasks. *Id.* at 1.

**RESPONSE: The Farmworkers admit the factual allegations set forth in Paragraph 18 of Plaintiffs' Complaint.**

19.     IEL also represented in the IEL [sic] that it would inform all workers that there was no guarantee of housing at Todd Greiner Farms. *Id.* at 1.

**RESPONSE: The Farmworkers admit the factual allegations in Paragraph 19 to the extent**

7

that the Agreement attached as Exhibit A to Plaintiffs' Complaint states that IEL "will inform workers that housing may be provided by Grower but is not guaranteed." (*Id.* at 17). The Farmworkers are without knowledge or information sufficient to form a belief as to the truth of any additional factual allegations set forth in Paragraph 19 of Plaintiffs' Complaint.

20. Todd Greiner Farms provided IEL with copies of Todd Greiner Farms' Employment Disclosures. *See* Employment Disclosures, **Exhibit C**. The Employment Disclosures specifically indicate that Defendants would be hired as at-will employees, such that either Todd Greiner Farms or Defendants "may terminate the employment relationship for any reason or no reason with or without cause, or advance notice." *Id.* at 1.

**RESPONSE: The Farmworkers are without knowledge or information sufficient to form a belief as to the truth of the factual allegations set forth in the first sentence of Paragraph 20 of Plaintiffs' Complaint. The Farmworkers admit the remaining factual allegations set forth in Paragraph 20 of Plaintiffs' Complaint.**

21. The Employment Disclosures further indicate that the 2014 employment season for most workers commence in May and end in December, but further provide that "[t]here is no promise of employment for any specific period of time," and that "[s]pecific work schedule[s] and work hours may vary . . . . " *Id.* at 2. In addition, the Employment Disclosures specifically indicate that "[e]mployment hours are always influenced by factors such as weather conditions, size of harvest, customer expectations of delivery of product and other reasons." *Id.* at 6.

**RESPONSE: The Farmworkers admit the factual allegations set forth in Paragraph 21 of Plaintiffs' Complaint.**

22. The Employment Disclosures also state that employees "must provide their own

transportation to and from the place of employment, and between work locations." *Id* at 3.

**RESPONSE: The Farmworkers admit the factual allegations set forth in Paragraph 22 of Plaintiffs' Complaint.**

23.     In addition, the Employment Disclosures provide that housing may be available for some, but not all, employees. *Id.* at 4.

**RESPONSE: The Farmworkers admit the factual allegations set forth in Paragraph 23 of Plaintiffs' Complaint.**

24.     Finally, the Employment Disclosures have an entire section devoted to compensation, which does not in any way indicate that workers will be entitled to overtime pay.

**RESPONSE: The Farmworkers admit the factual allegations set forth in Paragraph 24 of Plaintiffs' Complaint to the extent that the documents attached to Plaintiffs' Complaint as Exhibit C do not specifically address overtime pay. (Compl., Ex. C, Dkt. 1-3, PageID.30-31).**

25.     IEL provided the Employment Disclosures to Defendants, and all of the Defendants signed the Employment Disclosures.  IEL provided Todd Greiner Farms with copies of Defendants' signatures. *See* **Exhibit D.**

**RESPONSE: The Farmworkers deny the factual allegations set forth in the first sentence of Paragraph 25 of Plaintiffs' Complaint. The Farmworkers are without knowledge or information sufficient to form a belief as to the truth of the factual allegations set forth in the second sentence of Paragraph 25 of Plaintiffs' Complaint.**

26.     IEL transported Defendants to Todd Greiner Farms, and they arrived on or around April 28, 2014.

**RESPONSE: The Farmworkers admit they were transported from Florida to Michigan by**

IEL.  The Farmworkers admit that some of them arrived in Michigan on or around April 28, 2014. The Farmworkers deny ALTEGA SEVERE and MIREILLE MILORD arrived on or around April 28, 2014.

27.     Todd Greiner Farms typically starts its first harvest, of asparagus, on or around May 8. However, during the 2014 season, Michigan experienced a very cold and wet spring, which significantly delayed the start of the asparagus harvest. Todd Greiner Farms was not able to start harvesting its asparagus until May 21, which is approximately two weeks late.

**RESPONSE: The Farmworkers are without knowledge or information sufficient to form a belief as to the truth of the factual allegations set forth in Paragraph 27 of Plaintiffs' Complaint.**

28.     While Todd Greiner Farms was waiting for the asparagus harvest, it had to try to find work for all of its workers, including Defendants, and it made an effort to do so. As a result of the cool and wet conditions, the 2014 asparagus season lasted approximately five weeks, which was two to two-and-a-half weeks shorter than the normal harvest.

**RESPONSE: The Farmworkers are without knowledge or information sufficient to form a belief as to the truth of the factual allegations set forth in Paragraph 28 of Plaintiffs' Complaint.**

29.      Todd Greiner Farms next harvested zucchini and cherries. The zucchini and cherry harvests were also delayed because of weather conditions. For example, the zucchini harvest did not start until July 18, which is later than is typical. After the zucchini and cherry harvests were complete, Todd Greiner Farms' employees, including some of the Defendants, subsequently harvested sweet corn, peaches, hard squash, and pumpkins.

**RESPONSE: The Farmworkers are without knowledge or information sufficient to form a**

belief as to the truth of the factual allegations set forth in Paragraph 29 of Plaintiffs'
Complaint.

30.     Todd Greiner Farms' workers, including Defendants, were impacted equally by
the weather conditions during the 2014 growing season, which resulted in periods where workers
worked less than 40 hours per week.  During these times, Todd Greiner Farms attempted to find
as much work as possible for its employees to do while it waited for the various crops to ripen.

**RESPONSE: The Farmworkers admit that there were periods in 2014 during which
Plaintiffs offered them less than 40 hours of work per week.  The Farmworkers are without
knowledge or information sufficient to form a belief as to the truth of the remaining factual
allegations set forth in Paragraph 30 of Plaintiffs' Complaint.**

31.     Todd Greiner Farms terminated the employment of nine of the Defendants,
LUCLERA GABRIEL, FANIA BORDES MENTOR, ELINE CHERY, ANNE AUBOURG
LAMOUR, ALTEGA SEVERE, MARIE SYLVIA CORNET, IFORA PIERRE, MIREILLE
MILORD, and JEAN MAURICE MASSE (collectively, the "Terminated Defendants") because
these employees could not perform the required work.

**RESPONSE: The Farmworkers admit that well before the conclusion of the 2014 harvest
season on their operations, Plaintiffs terminated the employment of LUCLERA GABRIEL,
FANIA BORDES MENTOR, ELINE CHERY, ANNE AUBOURG LAMOUR, ALTEGA
SEVERE, MARIE SYLVITA COURNET, IFORA PIERRE, MIREILLE MILORD and
JEAN MAURICE MASSE.  The Farmworkers deny Paragraph 31 to the extent that it
alleges the employees could not perform the required work. The Farmworkers are without
the knowledge or information sufficient to form a belief as to the truth of the remaining
factual allegations set forth in Paragraph 31 of Plaintiffs' Complaint.**

32.     Todd Greiner Farms had three of its experienced supervisors train and work with the Terminated Defendants on a daily basis during the asparagus harvest. However, the Terminated Defendants did not improve and could not properly harvest asparagus, which hurt Todd Greiner Farms' crops production and quality. Todd Greiner Farms' supervisors reported that they did not believe that the Terminated Defendants had the skills or ability to continue working on the harvest of other crops.

**RESPONSE: The Farmworkers deny the factual allegation in Paragraph 32 that any of the Farmworkers could not properly harvest asparagus. The Farmworkers are without knowledge or information sufficient to form a belief as to the truth of the remaining factual allegations set forth in Paragraph 32 of Plaintiffs' Complaint.**

33.     Todd Greiner Farms communicated this situation to IEL at the end of the asparagus harvest. IEL informed Todd Greiner Farms that it understood that the Terminated Defendants could not perform the required work, and IEL promised to make arrangements to provide for transportation for the Terminated Defendants to another job, which IEL informed Todd Greiner Farms was in Georgia.

**RESPONSE: The Farmworkers are without knowledge or information sufficient to form a belief as to the truth of the factual allegations set forth in Paragraph 33 of Plaintiffs' Complaint.**

34.      However, on July 25, 2014, IEL informed Todd Greiner Farms that it did not have another employment opportunity available for the Terminated Defendants, and it requested that Todd Greiner Farms try to find some work for the Terminated Defendants to do while IEL arranged for transportation for the Terminated Defendants.

**RESPONSE: The Farmworkers are without knowledge or information sufficient to form a**

**belief as to the truth of the factual allegations set forth in Paragraph 34 of Plaintiffs'
Complaint.**

35.     Todd Greiner Farms attempted to accommodate this request by having the
Terminated Defendants work in the cherry orchard hand harvesting young cherries. Again, however,
Todd Greiner Farms' supervisors evaluated the Terminated Defendants' job performance and
reported that the Terminated Defendants could not perform the required work. After spending
months training and evaluating the Terminated Employees, Todd Greiner Farms terminated their
employment, as it could not continue to sacrifice the health and production of its crops.

**RESPONSE: The Farmworkers deny the factual allegation in the second sentence of Paragraph
35 that the Farmworkers could not perform the required work. The Farmworkers deny the
factual allegation in the third sentence of Paragraph 35 that any Farmworker received "months
of training." The Farmworkers are without knowledge or information sufficient to form a
belief as to the truth of the factual allegations set forth in Paragraph 35 of Plaintiffs'
Complaint.**

36.     Todd Greiner Farms provided this update to IEL, which again promised to make
arrangements to transport the Terminated Defendants from Todd Greiner Farms. These promises
continued for the next several weeks, but IEL never followed through and provided transportation
for the workers.

**RESPONSE: The Farmworkers admit IEL failed to provide transportation for the workers
after Growers terminated their employment at Todd Greiner Farms. The Farmworkers
are without knowledge or information sufficient to form a belief as to the truth of the
remaining factual allegations set forth in Paragraph 36 of Plaintiffs' Complaint.**

37.     During the 2014 growing season, the United States Department of Labor ("DOL")

13

apparently conducted an investigation of IEL, and a "spin-off" investigation of Todd Greiner Farms was also conducted. See Investigation Report, **Exhibit E.**

**RESPONSE: The Farmworkers admit the factual allegations set forth in Paragraph 37 of Plaintiffs' Complaint.**

38.     The DOL investigated Todd Greiner Farms' compliance with various requirements of AWPA. In connection with this investigation, the DOL interviewed various of Todd Greiner Farms' employees, including some or all of the Defendants. Todd Greiner Farms fully cooperated with the DOL investigation and provided all requested information.

**RESPONSE: The Farmworkers admit the first sentence of Paragraph 38. The Farmworkers admit that the DOL interviewed some of the Defendants. The Farmworkers are without knowledge or information sufficient to form a belief as to the truth of the remaining factual allegations set forth in Paragraph 38 of Plaintiffs' Complaint.**

39.     In its findings at the conclusion of its investigation, which are attached as Exhibit F, the DOL determined that Todd Greiner Farms:

a.     Provided and displayed the required legal postings in its packing shed, in its office where employee checks were distributed each week, and on the bus used to transport Defendants;

b.     Maintained all required employment records;

c.     Provided complete wage statements to every worker;

d.     Provided housing terms and conditions in writing to all workers and properly posted its camp license; and

e.     Housed its workers in "new" living facilities that were clean, with all amenities in working condition. *See* Exhibit E at 6-8.

**RESPONSE: The Farmworkers admit that the DOL issued a Compliance Action Report and Migrant and Seasonal Agricultural Worker Protection Act Narrative (hereinafter "DOL Narrative"), which are attached as Exhibit E to Plaintiffs' Complaint (Compl., Ex. E, Dkt. 1-5, PageID.61-75), but are without knowledge or information sufficient to form a belief as to the truth that the DOL Narrative constitutes "findings at the conclusion of [DOL's] investigation." The Farmworkers admit the factual allegations in Paragraph 39 only to the extent that they reflect the actual language of the Narrative. The Farmworkers deny the factual allegation that Growers "provided and displayed required legal postings" in Paragraph 39(a) to the extent that DOL Narrative only states "displayed the required poster." (*Id.* at 68). The Farmworkers deny factual allegation in Paragraph 39(d) that the DOL Narrative characterized the posting of the camp license as "proper." (*Id.* at 69-70). The Farmworkers further deny that the statements in the DOL Narrative and the interpretations, characterizations, or conclusions which Growers attempt to derive therefrom are dispositive of material facts or legal issues underlying Growers request for declaratory judgment or the claims for relief raised in the Farmworkers' Counterclaim.**

40.     The DOL further determined that employees were responsible for providing their own transportation to and from work. While this transportation was originally provided by Ernso Mathurin of IEL, Mr. Mathurin was terminated by IEL during the 2014 growing season. Todd Greiner Farms then had one of its permanent employees drive Defendants to and from work in a van owned by Todd Greiner Farms. The DOL correctly noted that Todd Greiner Farms' van was insured under a large umbrella insurance policy. *Id.* at 8.

**RESPONSE: The Farmworkers deny the first sentence set forth in Paragraph 40 of Plaintiffs' Complaint to the extent that the DOL Narrative only states: "Non-IEL EEs of**

the [Growers] were responsible for providing their own transportation to and from work each day." (Compl., Ex. E, Dkt. 1-5, PageID.70). The Farmworkers admit the factual allegations in the second and third sentences to the extent that the DOL Narrative indicates Ernso Mathurin provided transportation to IEL workers "per the FLC contract" with Growers (*Id.*) and that the DOL Narrative indicates Ernso Mathurin was terminated during the investigation (*Id.*), but the Farmworkers are without knowledge or information sufficient to form a belief as to the truth of the remainder of the factual allegations set forth in Paragraph 40.

41.     The DOL did determine that Todd Greiner Farms committed a single violation under AWPA related to its Employment Disclosures. According to the DOL, IEL verbally promised Defendants "six months of consistent work," from May through December. *Id.* The DOL did not believe that the Employment Disclosures clearly communicated the potential for periods of downtime or less than full employment. *Id.* The DOL also found that Todd Greiner Farms failed to indicate a production standard.

**RESPONSE: The Farmworkers are without knowledge or information sufficient to form a belief as to the truth of the factual allegation set forth in Paragraph 41 of Plaintiffs' Complaint that DOL determined a "single violation" under AWPA. The Farmworkers admit that the DOL Compliance Action Report indicates one violation for misrepresenting conditions to workers.  (Compl., Ex. E, Dkt. 1-5, PageID.62). The Farmworkers further admit that the DOL Narrative states that Todd Greiner Farms was cited for "misrepresenting employment conditions" (*Id.* at 68).The Farmworkers admit the factual allegations in the second sentence of Paragraph 41 to the extent that the DOL Narrative states IEL "had disclosed to workers that the period of employment would be from May**

through October, 2014" and that Todd Greiner Farms' "disclosure even mentions that the typical work season extends through December."

The Farmworkers admit the DOL did not believe that the Employment Disclosures clearly communicated the potential for periods of downtime or less than full employment to the extent the DOL Narrative stated "[n]o work stoppages or slow periods between crops were communicated to employees either verbally or in writing. However, large gaps in employment occurred after workers arrived in Michigan." (*Id.*) The Farmworkers also admit the DOL found that Todd Greiner Farms failed to indicate a production standard. (*Id.* at 69).

42.    As a result of this finding, the DOL counseled Todd Greiner Farms to provide more information in its future Employment Disclosures with respect to periods of work, downtimes, rates of pay, and any production standards. *Id.*

RESPONSE: The Farmworkers admit the factual allegation in Paragraph 42 to the extent that the DOL Narrative indicates that the DOL counseled Growers to "include all of the required information in their future disclosures," including periods of work, downtimes, rates of pay, any deductions that will be made from pay, and any production standards. (*Id.* at 71). The Farmworkers are without knowledge or information sufficient to form a belief as to the truth of the factual allegation set forth in Paragraph 42 of Plaintiffs' Complaint as to whether "DOL counseled Todd Greiner Farms" or whether any such counsel was the "result of this finding."

43.    The DOL did not impose any civil monetary penalties or fines on Todd Greiner Farms, as the single violation at issue was not found to be "repeat or recurring." *Id.* Moreover, the DOL specifically found that:

17

> [Todd Greiner Farms] . . .  made various attempts to provide work
> for the individuals during these downtimes and even alerted the FLC so
> that they could find work on another farm until the next crops were
> available . . . [Todd Greiner Farms] didn't stand to gain either from failing
> to disclose the downtimes or any production standards as [Todd Greiner
> Farms] brought [Defendants] up to $8 per hour if they couldn't produce
> enough to make that wage in piece-rate.
>
>          * * *
>
> It doesn't appear the employer achieved a financial gain due to the
> violation. [Todd Greiner Farms] continued to house workers free of charge
> during the slow periods of employment with no work performed in return
> to offset those costs. The workers were provided with side work as much
> as possible to put in some hours during slow periods.

*Id.* at 7, 12.

**RESPONSE: The Farmworkers admit that the quoted language in Paragraph 43 includes excerpts from selected paragraphs of the DOL Narrative Report at Exhibit E of Plaintiffs' Complaint (*Id.* at 69), but are without knowledge or information sufficient to form a belief as to the truth of the other factual allegations in Paragraph 43. The Farmworkers further deny that the statements in the DOL Narrative and the interpretations, characterizations, or conclusions which Growers attempt to derive therefrom are dispositive of material facts or legal issues underlying Growers request for declaratory judgment or the claims for relief raised in the Farmworkers' Counterclaim.**

    44.     Todd Greiner Farms does not believe that it violated AWPA based on the language contained in its Employment Disclosures, including the language quoted above. Todd Greiner Farms did fully cooperate with the DOL investigation and agreed to fully comply with AWPA.

**RESPONSE: The Farmworkers are without knowledge or information sufficient to form a belief as to the truth of the factual allegations set forth in Paragraph 44 of Plaintiffs'**

Complaint.

45.     Significantly, the DOL did not determine that any of the Defendants were promised an hourly rate of pay of $9.00/hour or that any of the Defendants were promised overtime.

**RESPONSE: The Farmworkers are without knowledge or information sufficient to form a belief as to the truth of the factual allegations set forth in Paragraph 45 of Plaintiffs' Complaint.**

46.     Moreover, at no point during the 2014 growing season did any of the Defendants indicate to Todd Greiner Farms that they were promised a rate of pay of $9.00/hour or that they were promised overtime. In addition, Defendants' pay statements specifically indicated their rate of pay and did not indicate any overtime pay.

**RESPONSE: The Farmworkers deny the first sentence of Paragraph 46 of Plaintiffs' Complaint.  The Farmworkers admit the factual allegations set forth in the second sentence of Paragraph 46 of Plaintiffs' Complaint.**

47.     With respect to the rate of pay in 2014, the amount paid to Defendants varied depending upon the specific task performed. Defendants were always paid at least $8.00/hour and were paid in excess of $8.00/hour on numerous tasks. Wage rates, and any changes to those rates, were posted in the farm's main office, in the packing shed building near the time clock, and near the other required postings. This is consistent with the Employment Disclosures, which indicate that changes to rates of pay will be posted on the bulletin board next to the time clock. See Ex. C at 2.

**RESPONSE: The Farmworkers admit the factual allegations set forth in the first sentence**

**of Paragraph 47. The Farmworkers deny the factual allegations in the second sentence and are without knowledge or information sufficient to form a belief as to the truth of the remaining factual allegations set forth in Paragraph 47 of Plaintiffs' Complaint.**

48.    Beginning in the summer of 2015, counsel for Defendants began contacting Todd Greiner Farms with allegations of violations of the AWPA.

**RESPONSE: The Farmworkers deny the factual allegations set forth in Paragraph 48 of Plaintiffs' Complaint.**

49.    Specifically, Defendants, through their counsel, allege that Todd Greiner Farms, Todd Greiner, and Sarah Greiner violated the AWPA by:

   a.    Failing to disclose in writing the relevant terms and conditions of employment at the time Defendants were recruited, in violation of 29 U.S.C. § 1821(a);

   b.    Failing to post in a conspicuous place the rights and protections afforded to Defendants under AWPA, in violation of 29 U.S.C. § 1821(b);

   c.    Failing to post in a conspicuous place or present to each Defendant a statement of the terms and conditions of occupancy of the housing provided, in violation of 29 U.S.C. § 1821(c);

   d.    Knowingly providing false or misleading information to Defendants concerning the terms and conditions of their employment, in violation of 29 U.S.C. § 182l(f);

   e.    Failing to provide to Defendants the required disclosures in writing in a language that they could understand, in violation of 2 U.S.C. §

20

1821(g);

f.     Failing to pay Defendants their wages when due, in violation of 29 U.S.C.§ 1822(a);

g.     Failing to provide safe vehicles for the transportation of Defendants in violation of 29 U.S.C. § 184l(b)(l);

h.     Utilizing the services of a farm labor contractor to perform farm labor contractor activities in which neither was duly authorized to engage by the United States Department of Labor, in violation of 29 U.S.C. § 1842; and

i.     Violating, without justification, the alleged working arrangements with Defendants, in violation of 29 U.S.C. § 1822(c), by:

     i.     As to FANIA BORDES MENTOR, ELINE CHERY, ANNE AUBOURG LAMOUR, ALTEGA SEVERE, MARIE SYLVIA CORNET, IFORA PIERRE, LUCLERA GABRIEL, MIREILLE MILORD, and JEAN MAURICE MASSE, failing to provide work through October 31,2014;

     ii.     Failing to offer each Defendant at least 40 hours per week during the 2014 harvest season;

     iii.     Failing to pay an hourly wage of at least $9 per hour;

     iv.     Failing to provide overtime pay for hours worked in excess of 40 hours per week;

     v.     Failing to provide free transportation to obtain necessary items and

services in the local area;

vi.     Failing to provide Plaintiffs with free return transportation to Florida at the end of their employment;

vii.     Failing to specify in writing the terms and conditions under which the promised work was to be performed, the rate of wages and how, when and where said wages were to be paid, in violation of the "Working at Point away from Home Locality Act," MICH. COMP. LAWS §§ 408.581, *et seq.;* and

viii.     Failing to pay wages timely under the "Michigan Payment of Wages and Fringe Benefits Act," MICH. COMP. LAWS §§ 408.471, *et seq.*

**RESPONSE: The Farmworkers admit the factual allegations of subsection (e) of Paragraph 49 of Plaintiffs' Complaint, but allege violations of 2 U.S.C. § 1821(g) for failing to provide both required disclosures <u>and postings</u> in writing in a language that the Farmworkers could understand. The Farmworkers admit the factual allegations of subsection (i)(vi) of Paragraph 49 to the extent that the Growers violated the AWPA by failing to provide <u>the Farmworkers</u> with free return transportation to Florida at the end of their employment by Greiner Farms. The Farmworkers deny the factual allegations of subsections (b) and (c) of Paragraph 49. The Farmworkers admit the remaining factual allegations set forth in Paragraph 49 of Plaintiffs' Complaint.**

50.     Defendants, through their counsel, further allege that Todd Greiner Farms breached its employment agreement with Defendants or that Plaintiffs are otherwise liable under a related theory of promissory estoppel, based on the allegations that Todd Greiner Farms:

a.     Failed to provide free return transportation back to Florida when Defendants'

employment ended;

b.    Failed to provide free transportation from Plaintiffs' migrant housing to the worksites and other locales in and around Oceana County, Michigan, in order to access necessary personal items and services, such as groceries and medical care;

c.    Failed to provide at least forty hours of work per week throughout the 2014 harvest season;

d.    Failed to pay at least $9.00 per hour for each hour worked;

e.    Failed to provide overtime pay of time-and-a-half ($13.50) for each hour worked in excess of forty hours per week; and

f.    As to Defendants LUCLERA GABRIEL, FANIA BORDES MENTOR, ELINE CHERY, ANNE AUBOURG LAMOUR, ALTEGA SEVERE, MARIE SYLVITA CORNET, IFORRA PIERRE, MIREILLE MILORD, and JEAN MAURICE MASSE, Defendants terminated their employment at Todd Greiner Farms without justification on or about July 26, 2014.

**RESPONSE: The Farmworkers admit the factual allegations set forth in Paragraph 50 of Plaintiffs' Complaint.**

51.    Defendants further claim that Plaintiffs terminated the employment of Defendants LUCLERA GABRIEL, FANIA BORDES MENTOR, ELINE CHERY, ANNE AUBOURG LAMOUR, ALTEGA SEVERE, MARIE SYLVITA CORNET, IFORRA PIERRE, MIREILLE MILORD, and JEAN MAURICE MASSE without

justification.

**RESPONSE: The Farmworkers admit the factual allegations set forth in Paragraph 51 of Plaintiffs' Complaint.**

52.     Defendants also claim that Plaintiffs failed to provide free housing and utilities to Defendants FANIA BORDES MENTOR, ELINE CHERY, ANNE AUBOURG LAMOUR, ALTEGA SEVERE, MARIE SYLVITA CORNET, LUCLERA GABRIEL, MIREILLE MILORD, and JEAN MAURICE MASSE, through the end of the harvest season.

**RESPONSE: The Farmworkers admit the factual allegations set forth in Paragraph 52 of Plaintiffs' Complaint.**

53.     Defendants claim that Plaintiffs failed to provide Defendant JEAN PAUL transportation to access medical attention after he fell from a ladder on or about July 28, 2014.

**RESPONSE: The Farmworkers admit the factual allegations set forth in Paragraph 53 of Plaintiffs' Complaint.**

54.     Defendants claim that Plaintiffs failed to provide Plaintiff ROGER POMPILIUS transportation to access medical attention for a severe stomach ailment on or about August 3, 2014.

**RESPONSE: The Farmworkers admit the factual allegations set forth in Paragraph 54 of Plaintiffs' Complaint.**

55.     Plaintiffs deny these allegations by Defendants. That being said, Plaintiffs, through their attorneys, made an offer to Defendants' counsel that the parties attempt to mediate this dispute before the parties engaged in expense and time-consuming litigaiton [sic]. Plaintiffs have also voluntarily produced hundreds of pages of records, at counsel for

Defendants' request, in an effort to resolve this dispute. Counsel for Defendants recently indicated that they are not interested in mediation at this time.

**RESPONSE: The Farmworkers admit that Plaintiffs produced to the Farmworkers' counsel numerous documents relating to Plaintiffs' employment of Farmworkers in 2014. The Farmworkers deny the remaining factual allegations set forth in Paragraph 55 of Plaintiffs' Complaint.**

## COUNT 1: DECLARATORY JUDGMENT THAT PLAINTIFFS DID NOT VIOLATE AWPA

56.     Plaintiffs incorporate the allegations in all preceding paragraphs as though fully set forth herein.

**RESPONSE: Paragraph 56 of Plaintiffs' Complaint sets forth a legal conclusion and requires no response.**

57.     An actual, present, and justiciable controversy has arisen and now exists between Plaintiffs and Defendants as to whether Defendants violated the AWPA.

**RESPONSE: The Farmworkers admit the factual allegations set forth in Paragraph 57 of Plaintiffs' Complaint.**

58.     Plaintiffs seek a declaratory judgment from this Court that they did not violate the AWPA with respect to Defendants.

WHEREFORE Plaintiffs respectfully request that the Court enter a declaration and judgment declaring that Plaintiffs have not committed any violations of the AWPA and award to Plaintiffs such other and further relief as the Court may deem just and proper.

**RESPONSE: Paragraph 58 of Plaintiffs' Complaint sets forth a legal conclusion and requires no response.**

## COUNT II: DECLARATORY JUDGMENT THAT PLAINTIFFS DID NOT BREACH THEIR EMPLOYMENT AGREEMENTS WITH DEFENDANTS AND DID NOT OTHERWISE FAIL TO FULFILL PROMISES TO DEFENDANTS

59.   Plaintiffs incorporate the allegations in all preceding paragraphs as though fully set forth herein.

**RESPONSE: Paragraph 59 of Plaintiffs' Complaint sets forth a legal conclusion and requires no response.**

60.   An actual, present, and justiciable controversy has arisen and now exists between Plaintiffs and Defendants as to whether Plaintiffs breached employment agreements between Plaintiffs and Defendants and whether Plaintiffs otherwise failed to fulfill promises to Defendants regarding the terms and conditions of Defendants' employment with Plaintiffs.

**RESPONSE: The Farmworkers admit the factual allegations set forth in Paragraph 60 of Plaintiffs' Complaint.**

61.   Plaintiffs seek a declaratory judgment from this Court that they did not breach any employment agreements between Plaintiffs and Defendants and that Plaintiffs did not otherwise fail to fulfill any promises that Plaintiffs made to Defendants regarding the terms and conditions of Defendants' employment with Plaintiffs.

WHEREFORE Plaintiffs respectfully request that the Court enter a declaration and judgment declaring that Plaintiffs are not in breach of any agreements with Defendants and did not otherwise fail to fulfill any promises to Defendants and award to Plaintiffs such other and further relief as the Court may deem just and proper.

**RESPONSE:  Paragraph 61 of Plaintiffs' Complaint sets forth a legal conclusion and requires no response.**

## DEFENDANTS' AFFIRMATIVE AND OTHER DEFENSES

Defendants assert the following affirmative and other defenses set forth below, and in making such defenses do not concede that they bear the burden of proof as to any of them. Discovery has not yet begin in this matter, and therefore Defendants have not yet fully collected and reviewed all the information and materials that may be relevant to the matters and issues raised herein. Accordingly, Defendants reserve the right to amend, modify, or expand these defenses and to take further positions as discovery proceeds in this matter.

### FIRST AFFIRMATIVE DEFENSE
### (Failure to State a Claim Upon Which Relief Can Be Granted)

Plaintiffs have failed to state a claim against Defendants upon which relief may be granted.

### SECOND AFFIRMATIVE DEFENSE
### (Reservation of Remaining Defenses)

Defendants reserve all affirmative defenses under Rule 8(c) of the Federal Rules of Civil Procedure and any other defenses, at law or in equity, that may now exist or in the future be available based on discovery and further factual investigation in this case.

### DEFENDANTS' JOINT COUNTERCLAIM

Defendants LUCLERA GABRIEL, JEAN PAUL, ALTEGA SEVERE, ELINE CHERY, FANIA BORDES MENTOR, JEAN JACQUES BORDES DESSALINES, FINA ZEAU, EMMANUEL JEAN ELIE, SEMEXTANT, TERTIL JULES, ANNE AUBOURG LAMOUR, IFORA PIERRE, ROGER POMPILUS, MARIE SYLVITA COURNET, JEAN DESIR, JEAN MAURICE MASSE, MIREILLE MILORD, SAINT PIERRE HILAIRE, JEAN ANTOINE SILLON, JEAN AUGUSTIN COMPERE, JEAN T. VERTUS, MILOT VERTUS and JEAN JOSEPH MORNO (collectively referred to as "the Farmworkers"), come now as Counterclaim-Plaintiffs for their joint counterclaims against Counterclaim-Defendants TODD GREINER

FARMS PACKING, LLC, TODD M. GREINER, and SARAH GREINER (collectively, "Growers"), allege and say:

## PRELIMINARY STATEMENT

1.      The Farmworkers are twenty-two (22) Haitian migrant farmworkers. Growers recruited the Farmworkers from Florida and employed them to hand-harvest fruit and vegetables in 2014 for TODD GREINER FARMS PACKING, LLC in Oceana County, Michigan.

2.      Growers violated the Farmworkers' employment rights by, *inter alia,* providing false and misleading information regarding the terms and conditions of employment; failing to provide statutorily-required written disclosures at the time of recruitment regarding the terms and conditions of employment; failing to provide statutorily-required insured transportation; violating the working arrangement with the Farmworkers without justification; failing to provide Farmworkers with free transportation back to Florida; and unlawfully discharging Farmworkers before the end of the employment period.

3.      The Farmworkers bring this action to obtain redress for Growers' violations of the Farmworkers' rights arising under the Migrant and Seasonal Agricultural Worker Protection Act, 29 U.S.C. §§ 1801, *et seq.* ("AWPA"), breach of contract, and breach of contract by promissory estoppel under Michigan law.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (Federal Question), 28 U.S.C. § 1337 (Interstate Commerce), and 29 U.S.C. § 1854(a) in that this action arises from federal claims under the Migrant and Seasonal Agricultural Worker Protection Act ("AWPA"), 29 U.S.C. §§ 1801, *et seq.*

5.      This Court has supplemental jurisdiction over the related state claims pursuant to

28 U.S.C. § 1367, because the state claims are so related to the federal claims that they form part of the same case or controversy.

6.     This Court may enter declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202 and Fed. R. Civ. P. 57.

7.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events or omissions giving rise to these claims occurred in this district. Venue is also proper pursuant to AWPA 29 U.S.C. § 1854(a).

## PARTIES

**Counterclaim-Plaintiffs**

8.     The twenty-two (22) Farmworkers, LUCLERA GABRIEL, JEAN JACQUES BORDES DESSALINES, FANIA BORDES MENTOR, ROGER POMPILIUS, ANNE AUBOURG LAMOUR, ELINE CHERY, TERTIL JULES, JEAN PAUL, IFORA PIERRE, EMMANUEL JEAN ELIE SEMEXANT, ALTEGA SEVERE, FINA ZEAU, MARIE SYLVITA COURNET, JEAN C. DESIR, SAINT PIERRE HILAIRE, JEAN ANTOINE SILLON, JEAN MAURICE MASSE, JEAN JOSEPH MORNO, JEAN T. VERTUS, MILOT VERTUS, JEAN AGUSTIN COMPERE, and MIREILLE MILORD, are natural persons with his or her permanent place of residence in Florida.

9.     Each of the twenty-two (22) Farmworkers is a Haitian national with his or her primary language being Haitian Creole. Each of the twenty-two (22) Farmworkers has limited English proficiency and does not read English. None of the twenty-two (22) Farmworkers reads Spanish.

**Counterclaim-Defendants**

10.     Counterclaim-Defendant TODD GREINER FARMS PACKING, L.L.C.

("GREINER FARMS, LLC") is a Michigan limited liability company that has its principal place of business in Hart, Oceana County, Michigan.

11.     GREINER FARMS, LLC is a fruit and vegetable business. GREINER FARMS, LLC harvests around 1800 acres of a variety of fruits and vegetables—including asparagus, corn, cherries, pumpkins, apples, and other crops—which are sold nationally and abroad. GREINER FARMS, LLC also operates a processing, packaging, and shipping operation, which processes and packages produce for around fifteen farms.

12.     GREINER FARMS, LLC employs migrant and seasonal agricultural workers to work in its fields harvesting a variety of fruits and vegetables and in its processing and packaging operations.

13.     Counterclaim-Defendant TODD GREINER is an individual, the husband of Counterclaim-Defendant SARAH GREINER, and a natural person with his permanent place of residence in Hart, Michigan.

14.     Counterclaim-Defendant SARAH GREINER is an individual, the wife of Counterclaim-Defendant TODD GREINER, and a natural person with her permanent place of residence in Hart, Michigan.

15.     TODD GREINER and SARAH GREINER are the sole owners of GREINER FARMS, LLC. TODD GREINER and SARAH GREINER have been operating GREINER FARMS, LLC for over twenty years and are both involved in the day-to-day operations of the business.

**GENERAL ALLEGATIONS**

16.     At all times relevant to this action, each Farmworker was a person aggrieved by

Growers' violation of the requirements of AWPA, within the meaning of 29 U.S.C. § 1854(a).

17.     At all times relevant to this action, each Farmworker was engaged in "agricultural employment" within the meaning of AWPA, 29 U.S.C. § 1802(3).

18.     Each Farmworker harvested asparagus, corn, cherries, pumpkins, apples, or other crops on farms owned by Growers during the 2014 harvest season.

19.     At all times relevant to this action, each Farmworker was a "migrant agricultural worker" as defined by 29 U.S.C. § 1802(8)(A).

20.     Growers employed each Farmworker to harvest a variety of fruits and vegetables, including asparagus, during the 2014 harvest season.

21.     At all times relevant, TODD GREINER, SARAH GREINER, and GREINER FARMS, LLC each was a "person" within the meaning of 29 U.S.C. § 1802(9).

22.     At all times relevant, TODD GREINER, SARAH GREINER, and GREINER FARMS, LLC each was an "agricultural employer" within the meaning of 29 U.S.C. § 1802(2).

23.     TODD GREINER, SARAH GREINER, and GREINER FARMS, LLC recruit, employ, solicit, hire, transport, and house migrant and seasonal employees.

24.     During the 2014 season, TODD GREINER, SARAH GREINER, and GREINER FARMS, LLC directly or through an agent, recruited, employed, solicited, hired, transported, and housed migrant and seasonal employees, including each of the Farmworkers.

25.     At all relevant times, SARAH GREINER and TODD GREINER oversaw the day-to-day operations of GREINER FARMS, LLC. During the 2014 season, SARAH GREINER, *inter alia*, maintained the books for GREINER FARMS, LLC and oversaw the record keeping and payroll of the Farmworkers. During the 2014 season, TODD GREINER, *inter alia*, oversaw

the field and processing operations of GREINER FARMS, LLC.

26.     At all times pertinent hereto, TODD GREINER and SARAH GREINER were acting on behalf of GREINER FARMS, LLC.

27.     All of the actions and omissions of Growers TODD GREINER, SARAH GREINER, and GREINER FARMS, LLC were undertaken by TODD GREINER or SARAH GREINER directly or through their agents.

28.     Growers knew, or should have known, of the policies, practices, acts, and conditions alleged.

29.     Growers own the migrant labor camp, located at 5864 North 88th Street, Hart, Michigan 49420 ("the LaPorte Camp"), where the Farmworkers were housed during their employment for Growers in 2014.

30.     The units at the migrant labor camp, where Farmworkers were housed during their employment for Growers in 2014, did not meet the federal and state standards at any relevant time. For example, the shelters at the migrant labor camp were not free of insects, rodents, and other vermin; and the shelters at the migrant labor camp had windows that opened to the outside, were used for ventilation, and did not have mesh screens.

**Farm Labor Contractors**

31.     The Growers hired International Easy Labor, Inc. to solicit, recruit, furnish, supervise, drive, and transport migrant farm laborers for Growers' 2014 growing and harvest season.

32.     International Easy Labor, Inc. is a Florida corporation with its principal place of business in Miami, Dade County, Florida.

33.     Emmanuely Germain is the sole owner and president of International Easy Labor. Emmanuely Germain is an individual, natural person with his permanent place of residence in Florida.

34.     Michele ("Michael") Germain is the father of Emmanuely Germain and is involved in the daily operations of International Easy Labor, Inc.

35.     At all times relevant, International Easy Labor, Inc., Emmanuely Germain, and Michael Germain each was a "person" within the meaning of 29 U.S.C. § 1802(9).

36.     Growers authorized Emmanuely Germain, Michael Germain, and International Easy Labor, Inc. to solicit, recruit, furnish, supervise, drive, and transport migrant farm laborers for Growers' 2014 growing and harvest season.

37.     Growers paid Emmanuely Germain, Michael Germain, and International Easy Labor, Inc. to solicit, recruit, furnish, supervise, drive, and transport migrant farm laborers for Growers' 2014 growing and harvest season.

38.     Growers paid Emmanuely Germain a transportation fee for each worker for whom International Easy Labor, Inc. provided transportation.

39.     International Easy Labor, Inc. did furnish, recruit, solicit, drive, and transport migrant laborers, including the Farmworkers, for Growers in 2014.

40.     Emmanuely Germain did furnish, recruit, solicit, drive, and transport migrant laborers, including the Farmworkers, for Growers in 2014.

41.     Michael Germain did furnish, recruit, solicit, and drive migrant laborers, including the Farmworkers, for Growers in 2014.

42.     At all times relevant, International Easy Labor, Inc., Emmanuely Germain, and

Michael Germain each was a "farm labor contractor" within the meaning of 29 U.S.C. § 1802(7).

43.     International Easy Labor, Inc. did not have authorization from the United States Department of Labor ("DOL") to house or drive workers at any relevant time.

44.     International Easy Labor, Inc. did not have authorization from the United States Department of Labor ("DOL") to transport workers during all relevant times. International Easy Labor's authorization from the DOL to transport workers expired on March 23, 2014. (Compl., Ex. B, Dkt. 1-2, PageID. 26).

45.     Emmanuely Germain did not have a farm labor contractor certificate of registration during any relevant time. Emmanuely Germain did not have authorization from the DOL to transport, house, or drive workers at any relevant time.

46.     Michael Germain did not have authorization from the DOL to transport or house workers at any relevant time.

47.     As of March 25, 2014, Growers had not provided Emmanuely Germain, Michael Germain, or International Easy Labor, Inc. with any written disclosures to provide to workers.

48.     Growers never provided Emmanuely Germain, Michael Germain, or International Easy Labor, Inc. with any written disclosures in Haitian Creole to provide to workers.

49.     Upon information and belief, Growers authorized Emmanuely Germain to inform the workers at the time of their recruitment, *inter alia*:

> A.  Growers' migrant laborer seasonal employment begins in May;
>
> B. Growers' migrant laborer seasonal employment lasts through October;
>
> C. Employees of will need to be able to work at least 10 hours per day outside;
>
> D. Growers will provide housing at their migrant labor camp; and

E. Growers will pay workers at varying rates depending on the crops.

50. Upon information and belief, Growers gave Emmanuely Germain a written document, in English, which listed the jobs at GREINER FARMS, LLC to be performed during each month beginning with May 2014 and lasting through October 2014 and the rates to be paid for each of those jobs. The hourly rates of pay were as high as $10.00 per hour and piece rates for some jobs were as high as $14.50, $16.50, $17.00, and $18.00 per bushel. The rate of pay for one of the jobs on the list includes "Overtime over 40 hours." Only one job on the list indicates "No Overtime."

**May-Group Farmworkers' Recruitment and Working Arrangement**

51. On or around March 30, 2014, Michael Germain, on behalf of Growers, personally told twenty (20) Farmworkers, including LUCLERA GABRIEL, ANNE AUBOURG LAMOUR, ELINE CHERY, FANIA BORDES MENTOR, JEAN JACQUES BORDES DESSALINES, IFORA PIERRE, ROGER POMPILIUS, TERTIL JULES, JEAN PAUL, EMMANUEL JEAN ELIE SEMEXANT, FINA ZEAU, MARIE SYLVITA COURNET, JEAN C. DESIR, SAINT PIERRE HILAIRE, JEAN ANTOINE SILLON, JEAN MAURICE MASSE, JEAN AGUSTIN COMPERE, JEAN T. VERTUS, MILOT VERTUS, and JEAN JOSEPH MORNO (collectively "May-Group Farmworkers"), that if he/she accepted employment with GREINER FARMS, LLC in 2014, GREINER FARMS, LLC would provide the following:

A. Employment for Growers beginning on or about May 1, 2014 and lasting through the end of the harvest season on or about October 31, 2014;

B. Free transportation on or about May 1, 2014 from Florida to the migrant labor camp in Oceana County, Michigan;

C.     Free transportation from the migrant labor camp to the worksites and other locales in and around Oceana County, Michigan, in order to access necessary personal items and services, such as the bank, groceries, and medical care;

D.     Free return transportation to Florida at the end of employment on or about October 31, 2014;

E.     Free housing and utilities through the end of the harvest season on or about October 31, 2014;

F.     Over forty (40) hours of work per week throughout the 2014 harvest season;

G.     Wages of at least nine dollars ($9.00) per hour for each hour worked; and

H.     Overtime pay for each hour worked in excess of forty (40) hours per week.

52.     On or around March 30, 2014, Michael Germain, on behalf of Growers, solicited and recruited the twenty (20) March-Group Farmworkers to perform fruit and vegetable harvesting work for Growers in and around Oceana County, Michigan.

53.     At the time of the solicitation and recruitment on or around March 30, 2014, each of the twenty (20) March-Group Farmworkers was residing in Florida.

**June-Group Farmworkers' Recruitment and Working Arrangement**

54.     On or around May 30, 2014, Emmanuely Germain, on behalf of Growers, personally told two (2) of the Farmworkers, ALTEGA SEVERE and MIREILLE MILORD (collectively "June-Group Farmworkers"), that if he/she accepted employment with GREINER FARMS, LLC in 2014, GREINER FARMS, LLC would provide the following:

36

A.      Employment beginning on or about June 5, 2014 and lasting through the end of the harvest season on or about October  31, 2014;

B.      Free transportation on or about June 2, 2014 from Florida to the migrant labor camp in Oceana County, Michigan;

C.      Free transportation from the migrant labor camp to the worksites and other locales in and around Oceana County, Michigan, in order to access necessary personal items and services, such as the bank, groceries, and medical care;

D.      Free return transportation to Florida at the end of employment on or about October 31, 2014;

E.      Free housing and utilities through the end of the harvest season on or about October 31, 2014;

F.      Over forty (40) hours of work per week throughout the 2014 harvest season;

G.      Wages of at least nine dollars ($9.00) per hour for each hour worked; and

H.      Overtime pay for each hour worked in excess of forty (40) hours per week.

55.     On or around May 30, 2014, Emmanuely Germain solicited and recruited the two (2) May-Group Farmworkers, while they were residing in Florida, to perform fruit and vegetable harvesting work for Todd Greiner Farms in and around Oceana County, Michigan.

**Transportation**

56.     On or around March 29, 2014, Emmanuely Germain informed SARAH GREINER that the bus transportation would leave Florida for Michigan on April 28, 2014.

57.     On or around April 28, 2014 through on or around April 30, 2014, Emmanuely

37

Germain and International Easy Labor, Inc. provided the May-Group Farmworkers transportation from Florida to Growers' migrant labor camp in Oceana County, Michigan in a yellow bus.

58.     On or around April 28, 2014 through on or around April 30, 2014, Emannuely Germain or Michael Germain and Ernso Mathurin drove migrant laborers, including the May-Group Farmworkers, from Florida to Growers' migrant labor camp in Oceana County, Michigan in the yellow bus described in Paragraph 57.

59.     On or around June 3 through on or around June 6, 2014, Emmanuely Germain and International Easy Labor, Inc. provided the June-Group Farmworkers transportation from Florida to the Growers' migrant labor camp in Oceana County, Michigan in a passenger van.

60.     On or around June 3 through on or around June 6, 2014, Emmanuely Germain, Michael Germain, or an agent of International Easy Labor, Inc. drove the June-Group Farmworkers from Florida to the Growers' migrant labor camp in Oceana County, Michigan in the passenger van described in Paragraph 59.

61.     During the 2014 season, Growers paid at least one field foreman other than Emmanuely Germain and Michael Germain to drive the Farmworkers between the migrant labor camps and the fields.

62.     Throughout the duration of the Farmworkers' employment for Growers, each of the Farmworkers were transported in the yellow bus described in Paragraph 57 from Growers' migrant labor camp to the various fields and worksites where the Farmworkers worked for Growers.

63.     On at least one occasion during the 2014 season, each of the Farmworkers were

transported in the yellow bus described in Paragraph 57 from Growers' migrant labor camp or the various fields and worksites to the bank or to a store.

64.     International Easy Labor Inc.'s liability insurance for its transportation vehicles expired on April 25, 2014. (Compl. Ex. B, Dkt. No. 1-2, PageID.68.)

65.     Upon information and belief, the yellow bus described in Paragraph 57 did not have a valid general liability insurance policy, automobile liability insurance policy, or workers' compensation insurance policy covering the transportation of the Farmworkers at relevant times in 2014.

66.     Upon information and belief, the passenger van described in Paragraph 59 did not have a valid general liability insurance policy, automobile liability insurance policy, or workers' compensation insurance policy covering the transportation of Farmworkers at relevant times in 2014.

67.     Upon information and belief, the passenger van described in Paragraphs 59 did not have, at all relevant times, a valid general liability insurance policy, automobile liability insurance policy, or workers' compensation insurance policy when it was used to transport the two (2) June-Group Farmworkers from Florida to work for GREINER, LLC in Oceana County, Michigan.

68.     On at least one occasion during the 2014 growing and harvest season, International Easy Labor, Inc. and Growers failed to provide Farmworkers needed transportation to access the bank, store, medical services, or public transportation.

69.     Specifically, on or around July 28, 2014, neither Growers nor an agent of Growers provided Counterclaim-Plaintiff JEAN PAUL transportation to access medical attention after he

fell from a ladder while working for Growers.

70.     On or around August 3, 2014, neither Growers nor an agent of Growers provided Counterclaim-Plaintiff ROGER POMPILIUS transportation to access medical attention for a severe stomach ailment.

71.     None of the Farmworkers were provided transportation back to Florida at the termination of their employment or at the end of the harvest season by Growers, International Easy Labor, Emmanuely Germain, Michael Germain, or any other agent of Growers.

72.     None of the Farmworkers had a personal vehicle in Michigan during the 2014 season.

73.     Public transportation is not accessible from Growers migrant labor camp. Growers' migrant labor camp is approximately five (5) miles from the nearest town of Hart, Michigan.

**Employment**

74.     Each of the Farmworkers was an "employee" of Growers in 2014 within the meaning of the AWPA 29 U.S.C. § 1802(5) and the Michigan Payment of Wages and Fringe Benefits Act, MICH. COMP. LAWS § 408.471(c).

75.     Prior to arriving in Michigan, none of the Farmworkers had received written disclosures regarding the terms and conditions of their employment for Growers.

76.     On or around May 1, 2014, the twenty (20) May-Group Farmworkers attended orientation with SARAH GREINER and TODD GREINER at GREINER FARMS, LLC.

77.     On or around June 6, 2014, the two (2) June-Group Farmworkers attended orientation with SARAH GREINER and TODD GREINER at GREINER FARMS, LLC.

78.     At the orientation, Growers gave the Farmworkers a copy of the "Migrant, Seasonal and Agricultural Employment Document Packet" (hereinafter "The Packet") attached to Plaintiffs' Complaint as Exhibit C. (Compl. Ex. C, Dkt. 1-3, PageID.29-40.)

79.     None of the Farmworkers had received a copy of the documents in The Packet prior to arriving in Michigan.

80.     The Packet was not provided to any of the Farmworkers in written Haitian Creole at any relevant time.

81.     Upon information and belief, Growers did not translate the Packet into Haitian Creole. None of the Farmworkers ever received any written disclosures of the terms and conditions of their employment for Growers in Haitian Creole.

82.     The Packet states that the "Employment season for most workers will commence in May and end in **December**." (Compl. Ex. C, Dkt. 1-3, PageID.30, ¶ 2 (emphasis in original)).

83.     The Packet has a paragraph for "Hourly Rates" that was left blank. (*Id.* at 30,¶ 3).

84.     The Packet states: "Employee must provide their own transportation to and from the place of employment, and between work locations." (*Id.* at 31, ¶ 5).

85.     The Packet states: "Workweek is Sunday through Saturday." (*Id.* at 35, ¶ 11).

86.     The Packet does not include any production standard.

87.     Growers employed each Farmworker to cultivate and harvest agricultural products, which Growers sell to customers nationwide.

88.     Growers paid a field foreman to supervise the work of the Farmworkers while they were working in Growers' fields.

89.     At all relevant times, Growers controlled the type of work the Farmworkers were

performing for GREINER FARMS, LLC and the fields where Farmworkers worked each day.

90.     At all relevant times, Growers controlled the days and hours the Farmworkers performed work for GREINER FARMS, LLC.

91.     Each of the Farmworkers worked more than 40 hours for Growers during at least one pay period in 2014.

92.     Growers did not pay any of the Farmworkers an overtime rate for any week during the 2014 season.

93.     Growers did not provide the Farmworkers at least forty (40) hours of work each pay period for which the Farmworkers were employed by Growers. For example, during each pay period between June 22, 2014 and July 19, 2014, Growers employed the Farmworkers less than forty (40) hours per week.

94.     Specifically, during week ending July 12, 2014, Growers paid fifteen (15) Farmworkers—ELINE CHERY, FANIA B.MENTOR, FINA ZEAU, EMMANUEL J. SEMEXANT, TERTIL JULES, IFORA PIERRE, ROGER POMPILUS, MARIE SYLVITA COURNET, MIREILLE MILORD, SAINT PIERRE HILAIRE, JEAN A. SILLON, JEAN A. COMPERE, JEAN T. VERTUS, MILOT VERTUS, and JEAN JOSEPH MORNO—for only nine and a half (9.5) hours of work. During the week ending July 12, 2014, Growers paid one (1) Farmworker, ANNE A. LAMOUR, for only sixteen (16) hours of work. During the week ending July 12, 2014, Growers paid six (6) Farmworkers—LUCLERA GABIEL, JEAN PAUL, ALTEGA SEVERE, JEAN J. DESSALINES, JEAN DESIR, JEAN M. MASSE—for only nineteen (19) hours of work.

95.     Growers did not employ any of the Farmworkers through October 31, 2014.

96.     Growers, without justification, terminated the employment of the eight (8) of the Farmworkers—ALTEGA SEVERE, LUCLERA GABRIEL, FANIA BORDES MENTOR, ANNE AUBOURG LAMOUR, ELINE CHERY, JEAN MAURICE MASSE, MARIE SYLVITA COURNET, and MIREILLE MILORD—on or around July 25, 2014.

97.     Growers, without justification, terminated the employment of ROGER POMPILIUS on or around August 18, 2014.

98.     Growers, without justification, terminated the employment of JEAN JACQUES BORDES DESSALINES and SAINT PIERRE HILAIRE on or around August 22, 2014.

99.     Growers, without justification, terminated the employment of JEAN ANTIONE SILLON and JEAN AUGUSTIN COMPERE on or around August 28, 2014.

100.    Growers, without justification, terminated the employment of MILOT VERTUS on or around August 30, 2014.

101.    Growers, without justification, terminated the employment of JEAN T. VERTUS on or around September 5, 2014.

102.    Growers, without justification, terminated the employment of JEAN PAUL, IFORA PIERRE, TERTIL JULES, FINA ZEAU, EMMANUEL JEAN SEMEXANT, and JEAN C. DESIR on or around October 21, 2014.

103.    Growers made all hiring and firing decisions.

**Payroll Records/Wages**

104.    Growers prepared payroll and distributed checks to the Farmworkers using Growers' payroll database.

105.    Growers provided each of the Farmworkers with pay statements that do not

accurately reflect the actual hours each of the Farmworkers performed work for Grower during the respective pay period.

106.    Growers recorded hours on each of the Farmworkers' weekly time sheets that do not accurately reflect the hours each of the Farmworkers worked during the dates of his or her weekly time sheet.

107.    Growers did not maintain accurate records of the Farmworkers' start times, end times, or lunch breaks. For example, Growers automatically deducted a half-hour of time on each day the Farmworkers worked both before and after noon, even if the Farmworkers' weekly time sheet did not reflect a lunch break having been taken.

108.    Growers' pay statements for each of the Farmworkers do not accurately reflect the hours Growers recorded on the Growers' weekly time sheet record for each of the Farmworkers. For example, according to Growers' pay statement for EMMANUEL SEMEXANT, EMMANUEL SEMEXANT only worked 40.6 hours during pay period beginning June 8, 2014 and ending June 14, 2014. Growers' weekly time sheets for EMMANUEL SEMEXANT list hours that, in the aggregate, total 44.6 hours during pay period beginning June 8, 2014 and ending June 14, 2014.

109.    Growers required the Farmworkers to purchase a raincoat from the Growers. Growers deducted $8.95 from each of the Farmworkers' wages for the raincoat.

110.    Growers controlled the rates of pay of each of the Farmworkers.

111.    Growers failed to pay each of the Farmworkers at least $9.00 per hour for each hour worked.

112.    Growers did not provide free housing and utilities to sixteen (16) Farmworkers—

44

LUCLERA GABRIEL, ALTEGA SEVERE, ELINE CHERY, FANIA BORDES MENTOR, JEAN JACQUES BORDES DESSALINES, ANNE AUBOURG LAMOUR, ROGER POMPILUS, MARIE SYLVITA COURNET, JEAN MAURICE MASSE, MIREILLE MILORD, SAINT PIERRE HILAIRE, JEAN ANTOINE SILLON, JEAN AUGUSTIN COMPERE, JEAN T. VERTUS, MILOT VERTUS and JEAN JOSEPH MORNO—through the end of the 2014 season.

**General Allegations**

113.    At all times relevant, International Easy Labor, Inc., Emmanuely Germain, and Michael Germain were acting as agents for Growers.

114.    At all times relevant, International Easy Labor, Inc., Emmanuely Germain, and Michael Germain acted under the actual, apparent, or implied authority granted them by Growers.

115.    At all times relevant, all of the actions and omissions of International Easy Labor, Inc., Emmanuely Germain, and Michael Germain were taken for the benefit of the Growers.

116.    At all times relevant, the actions and omissions of International Easy Labor, Inc., Emmanuely Germain and Michael Germain benefitted Growers.

117.    Growers did not post in a conspicuous place or present to any of the Farmworkers a statement of terms and conditions of the occupancy of the migrant labor camp in Haitian Creole.

118.    Growers did not post in a conspicuous place any information that set forth migrant workers' rights and protections under the AWPA in Haitian Creole.

119.    Upon information and belief, the DOL has cited Growers for failing to comply

with the AWPA and Fair Labor Standards Act prior to the 2014 season. The DOL cited Growers for failing to comply with the AWPA and Fair Labor Standards Act related to GREINER FARMS, LLC's 2007 operation as well as its 2010 through 2012 operations in Michigan. (Compl., Ex. E, Dkt. 1-5, PageID. 64).

120.    Upon information and belief, the DOL cited Growers in 2014 for "misrepresenting employment conditions." *Id.* at 68. DOL issued a Compliance Action Report and Migrant and Seasonal Agricultural Worker Protection Act Narrative (hereinafter "DOL Narrative"), which that International Easy Labor, Inc. "had disclosed to workers that the period of employment would be from May through October, 2014." *Id.*

121.    The Farmworkers complained to Growers about the working conditions during the 2014 season.

## CLAIMS FOR RELIEF

### COUNT I:
### MIGRANT AND SEASONAL AGRICULTURAL WORKER PROTECTION ACT, (AWPA), 29 U.S.C. §§ 1801, *et seq.* (Against All Defendants)

122.    The Farmworkers reincorporate and allege each of the foregoing paragraphs of this Counterclaim as if fully set forth herein.

123.    The Growers, jointly and separately, intentionally violated the AWPA and its attendant regulations by committing the following acts or omissions, *inter alia*:

> A.    Failing to disclose in writing the relevant terms and conditions of employment at the time each of the Farmworkers was recruited, in violation of 29 U.S.C. § 1821(a);

46

B.      Failing to make, keep, and preserve the required payroll records for each of the Farmworkers, in violation of 29 U.S.C. § 1821(d)(1);

C.      Failing to provide each of the Farmworkers with a written statement each pay period with the required information to be disclosed under AWPA, in violation of 29 U.S.C. § 1821(d)(2);

D.      Knowingly provided false or misleading information to each of the Farmworkers concerning the terms and conditions of their employment, in violation of 29 U.S.C. § 1821(f);

E.      Failing to provide the required disclosures, to post the rights and protections afforded the Farmworkers, and to post the statement of the terms and conditions of the employment in a language that they could understand, in violation of 29 U.S.C. § 1821(g);

F.      Failing to pay each of the Farmworker their wages when due, in violation of 29 U.S.C. § 1822(a);

G.      Failing to ensure the migrant labor camp where the Farmworkers were housed complied with substantive Federal and State safety and health standards applicable to that housing, in violation of 29 U.S.C. § 1823;

H.      Causing the transportation of the Farmworkers in vehicles in violation of 29 U.S.C. § 1841;

I.      Utilizing a farm labor contractor, such as International Easy Labor, Inc. and Emmanuely Germain, to perform farm labor contractor activities for which they were not authorized to engage in  by the U.S. Department of Labor, in violation  of 29 U.S.C. §1842;

J.      Requiring the purchase of goods, in violation of 29 U.S.C. §1822(b);

K.      Violating, without justification, the working arrangement with the Farmworkers, in violation of 29 U.S.C. § 1822(c), by, *inter alia*:

   i.    Failing to offer each of the Farmworkers at least 40 hours work per week during the 2014 harvest season;

   ii.   Failing to pay an hourly wage of at least $9 per hour;

   iii.  Failing to provide overtime pay for any hours worked in excess of 40 hours per week;

   iv.   Implementing an undisclosed production standard;

   v.    Deducting, unlawfully, undisclosed costs for the raincoat;

   vi.   Failing to provide free transportation to obtain necessary items and services in the local area;

   vii.  Failing to provide the Farmworkers free return transportation to Florida at the end of their employment;

   viii. Failing to pay wages timely under the Michigan Payment of Wages and Fringe Benefits Act, Mich. Comp. Laws §§ 408.471, *et seq.*;

   ix.   Failing to provide any of the Farmworkers with employment through October 31, 2014; and

   x.    Failing to provide free housing to the sixteen (16) Farmworkers— LUCLERA GABRIEL, ALTEGA SEVERE, ELINE CHERY, FANIA BORDES MENTOR, JEAN JACQUES BORDES DESSALINES, ANNE AUBOURG LAMOUR, ROGER POMPILUS, MARIE SYLVITA COURNET, JEAN MAURICE MASSE, MIREILLE

MILORD, SAINT PIERRE HILAIRE, JEAN ANTOINE SILLON,

JEAN AUGUSTIN COMPERE, JEAN T. VERTUS, MILOT

VERTUS and JEAN JOSEPH MORNO—through October 31, 2014.

124.    The violations of the AWPA and its attendant regulations as set forth in this count were the natural consequences of the conscious and deliberate actions of Growers and were intentional within the meaning of the AWPA.

125.    The violations of the AWPA and its attendant regulations as set forth in this count occurred as part of the normal business practices of Growers.

126.    As a direct consequence of Growers' violations of the Farmworkers rights under the AWPA, each of the Farmworkers suffered harm.

127.    Growers are each jointly and severally liable for each violation of the AWPA, as set forth in this count, to each of the Farmworkers for the greater between his or her actual damages or  up to $500.00 in statutory damages per violation, pursuant to 29 U.S.C. § 1854.

128.    The Farmworkers, through their attorneys, made an attempt to resolve the issues in dispute, as contemplated by 29 U.S.C. § 1854(c)(2), by *inter alia*:

A.    On August 6, 2015, the Farmworkers' attorneys sent a letter to counsel for Counterclaim-Defendants' requesting to initiate settlement discussions.

B.    On November 12, 2015, the Farmworkers' attorneys sent a letter to counsel for Counterclaim-Defendants reasserting the Farmworkers' willingness to resolve this claim outside of court.

C.    On November 25, 2015, the Farmworkers' attorneys again sent a letter to counsel for Counterclaim-Defendants reasserting the Farmworkers' willingness to resolve their claims outside of court.

49

D.  On December 15, 2015, the Farmworkers' attorneys sent an email to counsel for Counterclaim-Defendants requesting Counterclaim-Defendants engage in informal negotiation or settlement discussions prior to mediation.

E.  On February 8, 2016, the Farmworkers' attorneys again sent a letter to counsel for Counterclaim-Defendants reasserting the Farmworkers' willingness to resolve their claims outside of court.

F.  On February 17, 2016 the Farmworkers' attorneys attempted to negotiate an initial settlement with counsel for Counterclaim-Defendants, reasserting the Farmworkers' willingness to resolve their claims outside of court.

G.  Despite the above attempts at settlement by the Farmworkers' attorneys, no offer of settlement has been made by Counterclaim-Defendants.

**COUNT II**
**BREACH OF CONTRACT**
**(Against All Defendants)**

129.  The Farmworkers reincorporate and allege each of the foregoing paragraphs of this Counterclaim as if fully set forth herein.

130.  Counterclaim-Defendants entered into an employment contract with each Farmworker.

131.  Counterclaim-Defendants breached the contract of employment into which they entered with each of the Farmworkers by failing to comply with the promised terms and conditions of employment.

132.  As a direct consequence of the Counterclaim-Defendants' breach of the

50

employment contract, the Farmworkers suffered substantial and foreseeable injury.

133.    The Farmworkers are entitled to actual, incidental, and consequential damages for Counterclaim-Defendants' breach of their employment contract with the Farmworkers.

**COUNT III**
**BREACH OF CONTRACT BASED ON PROMISSORY ESTOPPEL**
**(Against All Defendants)**

134.    The Farmworkers reincorporate and allege each of the foregoing paragraphs of this Counterclaim as if fully set forth herein.

135.    During Counterclaim-Defendants' recruitment of the Farmworkers in Florida in 2014, Counterclaim-Defendants, by their agents, promised the Farmworkers an hourly wage of at least $9.00.

136.    During Counterclaim-Defendants' recruitment of the Farmworkers in Florida in 2014, Counterclaim-Defendants promised the Farmworkers overtime pay as a condition of employment with Counterclaim-Defendant GREINER FARMS, LLC in Michigan.

137.    During Counterclaim-Defendants' recruitment of the Farmworkers in Florida in 2014, Counterclaim-Defendants promised the Farmworkers employment of at least forty (40) hours per week as a condition of employment with Counterclaim-Defendant GREINER FARMS, LLC in Michigan.

138.    During Counterclaim-Defendants' recruitment of the Farmworkers in Florida in 2014, Counterclaim-Defendants promised the Farmworkers employment form May until the end of October 2014 as a condition of employment with Counterclaim-Defendant GREINER FARMS, LLC in Michigan.

139.    Counterclaim-Defendants should reasonably have expected that these promises

would induce the Farmworkers to accept employment with GREINER FARMS, LLC in Michigan.

140.    The Farmworkers, to their detriment—including, *inter alia*, foregoing other employment and leaving their homes in Florida to travel to Michigan—reasonably relied on Counterclaim-Defendants' promises.

141.    Farmworkers have been harmed by Counterclaim-Defendant's failure to abide by their promises, including *inter alia* the promise to pay at least $9.00 an hour for every hour worked, to provide at least forty (40) hours of work per week, to provide steady employment through the end of October 2014, to provide overtime pay for hours worked in excess of forty hours in a pay period, and to provide free transportation within Michigan and back to Florida.

142.    Injustice can be avoided only by enforcement of Counterclaim-Defendants' promises.

## PRAYER FOR RELIEF

WHEREFORE, Farmworkers respectfully request that this Court grant the following relief against Counterclaim-Defendants, jointly and severally, as follows:

A. Declare that all Counterclaim-Defendants intentionally violated the AWPA and its attendant regulations as set forth in Count I;

B. Grant judgment in favor of the Farmworkers and against all Counterclaim-Defendants on the AWPA claims and its attendant regulations as set forth in Count I;

C. Award each of the Farmworkers the greater  between statutory damages of $500 and his/her actual damages for each violation of a provision of AWPA;

D. Declare that all Counterclaim-Defendants breached the employment contracts with the Farmworkers as set forth in Counts II and III;

E.  Award the Farmworkers actual, incidental, and consequential damages for

Counterclaim-Defendants' breach of their employment contract with the

Farmworkers;

F.  Award the Farmworkers prejudgment and post-judgment interest as allowed by law;

and

G.  Award the Farmworkers costs and any other relief as this Court deems just and

proper.

Respectfully submitted,

Attorney for LUCLERA GABRIEL, JEAN PAUL, ALTEGA SEVERE, ELINE CHERY, FANIA BORDES MENTOR, JEAN JACQUES DESSALINES BORDES, FINA ZEAU, EMMANUEL JEAN ELIE SEMEXANT, TERTIL JULES, ANNE AUBOURG LAMOUR, IFORA PIERRE, and ROGER POMPILIUS:

FARMWORKER LEGAL SERVICES


Date: July 11, 2016                    By: /s/ Kara K. Moberg
                                           Kara K. Moberg (P76820)
                                           Farmworker Legal Services
                                           3030 S 9th St. Suite 1A
                                           Kalamazoo, MI 49009
                                           Telephone: (269) 492-7190
                                           Facsimile:   (269) 492-7198
                                           kmoberg@lsscm.org


Attorneys for JEAN DESIR, MIREILLE MILORD, JEAN MAURICE MASSE, SAINT PIERRE HILAIRE, MARIE SYLVITA COURNET, JEAN ANTOINE SILLON, JEAN AUGUSTIN COMPERE, JEAN T. VERTUS, MILOT VERTUS, and JEAN JOSEPH MORNO:

MICHIGAN IMMIGRANT RIGHTS CENTER


Date: July 11, 2016                    By: /s/ Susan E. Reed

                                           Susan E. Reed (P66950)
                                           Michigan Immigrant Rights Center
                                           3030 S. 9th St. Suite 1B

Kalamazoo, MI 49009
Telephone: (269) 492-7196 x 535
Facsimile: (269) 492-7198

Date: July 11, 2016                By: /s/ Anna M. Hill
                                       Anna M. Hill (P78632)
                                       Michigan Immigrant Rights Center
                                       3030 S. 9th St., Suite 1B
                                       Kalamazoo, MI 49009
                                       Telephone: (269) 492-7196 ext. 542
                                       Facsimile: (269) 492-7198